**KOLLER LAW LLC**
David M. Koller, Esq. (90119)                                *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ANDRE FLETCHER,** | : | Civil Action No. |
| **124 Country Run Drive** | : | |
| **Coatesville, PA 19320** | : | |
|       Plaintiff, | : | |
| | : | |
| v. | : | **Complaint and Jury Demand** |
| | : | |
| **INFRAMARK, LLC,** | : | |
| **550 Brandywine Avenue** | : | |
| **Downingtown, PA 19335** | : | |
| | : | |
| **220 Gibraltar Road, Suite 200** | : | |
| **Horsham, PA 19044** | : | |
|       Defendant. | : | |

**CIVIL ACTION**

Plaintiff, Andre Fletcher (hereinafter "Plaintiff"), by and through his attorney, Koller Law, LLC, bring this civil matter against Inframark, LLC (hereinafter "Defendant"), for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended and the Pennsylvania Human Relations Act ("PHRA"). In support thereof, Plaintiff avers as follows:

**THE PARTIES**

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

2. Plaintiff is an adult individual residing at the above captioned address.

3. Upon information and belief, Defendant Inframark LLC a provider of water management and infrastructure services with a location at 550 Brandywine Avenue, Downingtown, PA

19335 and with a corporate headquarters located at 220 Gibraltar Road, Suite 200, Horsham, PA 19044.

4. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment.  In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

5. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer.  In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

6. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

7. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

8. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

9. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure

because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

10. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because some of the Plaintiff is domiciled in this judicial district, the Defendants is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

12. Plaintiff exhausted her administrative remedies under Title VII and PHRA.

13. Plaintiff timely filed a Complaint of Discrimination ("Complaint") with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging race discrimination and retaliation against Defendant.

14. The Complaint was assigned a Charge Number 530-2021-00978 and was dual filed with the Pennsylvania Human Relations Commission.

15. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") relative to the Charge and that Notice is dated March 4, 2021. Plaintiff received the notice by electronic mail.

16. Prior to the filing of this action, Plaintiff notified the EEOC of his intent to proceed with a lawsuit in federal court.

17. Plaintiff files the instant Complaint within ninety (90) days of his receipt of his Right to Sue in this matter.

18. Plaintiff has exhausted his administrative remedies as to the allegations of this Complaint.

## **MATERIAL FACTS**

### **PLAINTIFF'S EMPLOYMENT HISTORY**

19. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

20. Plaintiff is an African-American male.

21. On June 12, 1995, Defendant hired Plaintiff as an Operator in Training.

22. Plaintiff was well qualified and performed well.

23. Throughout Plaintiff's employment, Defendant promoted Plaintiff to various jobs throughout his employment.

24. On September 27, 2015, Defendant promoted Plaintiff to Project Manager.

25. Plaintiff was well qualified for his position and performed well.

26. Plaintiff was the only African American Project Manager out of approximately 11 Project Managers in his region.

### **PLAINTIFF'S SUPERVISOR DISCRIMINATED AGAINST HIM**

27. In or around the end of 2017, Michael Wolgemuth (Caucasian) became the Regional Manager and his direct supervisor.

28. Plaintiff noticed that Mr. Wolgemuth treated Plaintiff differently than the Caucasian Project Managers, as he was frequently spoke to Plaintiff in a condescending and rude manner and cursed at him, but did not do so with the Caucasian Project Managers.

### **MR. WOLGEMUTH SET PLAINTIFF UP FOR FAILURE**

29. In or around May 2019, Mr. Wolgemuth spoke to Plaintiff about managing the Wawa location.

30. The Wawa location was known for being an extremely poorly operated location, so much so that Mr. Wolgemuth had previously referred to it as a "shit hole" to Plaintiff.

31. Plaintiff was concerned that he was being set up to fail and expressed his concern to Mr. Wolgemuth, who responded that they would manage it together.

32. However, the following week when Plaintiff asked specific questions related to his job duties as a Project Manager of that site to Mr. Wolgemuth.

33. Mr. Wolgemuth responded by telling Plaintiff that he did not want to work and told him to quit if he did not accept the Wawa location.

34. Upon information and belief, Mr. Wolgemuth did not offer Caucasian Project Managers this location and did not tell them to resign if they had questions about an assignment.

35. Plaintiff's fear that Mr. Wolgemuth was setting him up for failure increased, as he further instructed him that he was not to speak with Scott Thomas (Caucasian), Plant Manager of the Wawa location, and Nathan Laucks (Caucasian), Project Manager of the Lititz location, under any circumstances.

36. This was against Defendant's policies and procedures, as discussion among management was crucial to understand and properly address operations.

### MR. WOLGEMUTH'S DISCRIMINATORY TREATMENT OF PLAINTIFF CONTINUED

37. Following this incident, Mr. Wolgemuth's treatment of Plaintiff became more severe.

38. In addition, Mr. Wolgemuth also began an intimidating practice in which he would sit in Plaintiff's office and not say anything while Plaintiff worked for approximately 45 minutes at a time.

39. Plaintiff and Mr. Wolgemuth worked in separate locations, which made Mr. Wolgemuth's practice even more odd.

**MR. WOLGEMUTH PLACED PLAINTIFF ON A PIP DUE TO FABRICATED CLAIMS**

40. On October 7, 2019, Plaintiff met with Mr. Wolgemuth and Stephanie Taylor, Human Resource Business Partner, who proceeded to place Plaintiff on a Performance Improvement Plan ("PIP").

41. Many of the issues listed on the PIP had already been addressed, were misleading or downright false.

42. In addition, Plaintiff had not received any prior warnings or deficient performance.

**PLAINTIFF COMPLAINED ABOUT THE PIP AND WAS TOLD TO DISREGARD IT**

43. On October 9, 2019, Plaintiff complained about the PIP to Marnie Vaughn (Caucasian), Vice President of Human Resources, and of the aggressive and unprofessional way Mr. Wolgemuth spoke to Plaintiff.

44. On October 15, 2019, Plaintiff proceeded to complain to Jerry Shupe (Caucasian), Regional Director, about the PIP and how Mr. Wolgemuth spoke to Plaintiff in a derogatory manner.

45. Mr. Shupe informed Plaintiff to disregard the PIP issued by Mr. Wolgemuth.

46. On October 21, 2019, Plaintiff met with Ms. Vaughn again and followed up with her regarding how she intended to address Plaintiff's complaint on October 9, 2019.

47. Ms. Vaughn informed Plaintiff that she would get back to him.

**DEFENDANT REFUSED PLAINTIFF'S REQUEST FOR A TRANSFER**

48. On November 6, 2019, Plaintiff met with Mr. Wolgemuth, Ms. Vaughn, Mr. Shupe and Ms. Taylor regarding the PIP and her complaints about it and Mr. Wolgemuth's derogatory treatment of him.

49. During this meeting, Plaintiff stated that he would be terminated if he spoke to his subordinates in a similar manner to how Mr. Wolgemuth spoke to Plaintiff.

50. Plaintiff also expressed concern of retaliation if he continued to work under Mr. Wolgemuth.

51. However, Ms. Vaughn stated that the situation was merely a communication issue between Plaintiff and Mr. Wolgemuth.

52. Ms. Vaughn proceeded to refuse Plaintiff's request to be placed under a different manager and instructed he and Mr. Wolgemuth to "work it out."

53. Plaintiff did not believe that Defendant properly address his complaints.

## **DEFENDANT PLACED PLAINTIFF ON A SUCCESS PLAN WHICH INCLUDED FALSE CLAIMS**

54. At the meeting, it was determined that Plaintiff would be placed on a Success Plan, instead of being placed on a PIP.

55. On November 11, 2019, Plaintiff was sent a copy of the Success Plan for him to sign.

56. However, there were numerous issues on it that had already been addressed or were false.

57. Plaintiff refused to sign the Success Plan because of this.

58. On November 15, 2019, Plaintiff met with Mr. Wolgemuth, Mr. Shupe and Ms. Taylor to revise the Success Plan.

59. On November 22, 2019, Plaintiff signed the corrected Success Plan and sent it to Ms. Taylor.

60. Plaintiff continued to work on the Success Plan along with his projects, daily responsibilities and duties.

## MR. WOLGEMUTH PROCEEDED TO DISCRIMINATE AND RETALIATE AGAINST PLAINTIFF

61. After this, Mr. Wolgemuth retaliated against Plaintiff by continuing to speak to him in a condescending and derogatory manner, nitpicking his work product and issuing verbal warning for minor issues.

62. For instance, Mr. Wolgemuth reprimanded him for not following the guidelines of his reports, despite Plaintiff using Defendant's template.

63. Plaintiff then had John Wilson (Caucasian), Assistant Manager, sent Plaintiff's reports to Mr. Wolgemuth, who would praise Mr. Wilson for the report, unaware that it was Plaintiff's work product.

## DEFENDANT TERMINATED PLAINTIFF

64. On July 16, 2020, Plaintiff met with Mr. Wolgemuth and Ms. Taylor who proceeded to terminate Plaintiff for alleged performance issues.

65. The alleged performance deficiencies were not true.

66. Defendant then replaced Plaintiff with Mr. Wilson.

67. It is Plaintiff's position that he was discriminated against due to his race and retaliated against for complaining about the aforementioned discrimination in violation of Title VII.

## COUNT I – RACE DISCRIMINATION
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

68. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

69. Plaintiff is a member of protected classes in that he is African-American.

70. Plaintiff was qualified to perform the job for which he was hired.

71. Plaintiff suffered adverse job actions, including, but not limited to termination.

72. Similarly situated people outside of Plaintiff's protected class were treated more

favorably than Plaintiff.

73. Circumstances exist related to the above cited adverse employment actions that give rise to an inference of discrimination.

74. Defendants discriminated against Plaintiff on the basis of race.

75. No legitimate, non-discriminatory reasons exist for the above cited adverse employment actions that Plaintiff suffered.

76. The reasons cited by Defendants for the above cited adverse employment actions that Plaintiff suffered are pretext for discrimination.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

### COUNT II – RACE DISCRIMINATION
### PENNSYLVANIA HUMAN RELATIONS ACT

77. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

78. The foregoing conduct by Defendants constitutes unlawful discrimination against Plaintiff on the basis of his race (African-American).

79. As a result of Defendants' unlawful race discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

### COUNT III – RETALIATION
### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

80. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

81. Plaintiff engaged in protected activity protected by Title VII when he internally complained about race discrimination.

82. Thereafter, Defendants took adverse employment actions against Plaintiff, including, but not limited to, termination.

83. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE,** Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT IV – RETALIATION
## PENNSYLVANIA HUMAN RELATIONS ACT

84. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

85. Plaintiff engaged in activity protected by the PHRA when he internally complained about race discrimination.

86. Thereafter, Defendants took adverse employment actions against Plaintiff, including, but not limited to, termination.

87. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE,** Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Andre Fletcher, requests that the Court grant him the following relief against Defendants:

    (a)    Compensatory damages;

    (b)    Punitive damages;

    (c)    Liquidated damages;

    (d)    Emotional pain and suffering;

(e) Reasonable attorneys' fees;

(f) Recoverable costs;

(g) Pre and post judgment interest;

(h) An allowance to compensate for negative tax consequences;

(i) A permanent injunction enjoining Defendants, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of the Title VII and the PHRA.

(j) Order Defendants to institute and implement, and for its employees, to attend and/or otherwise participate in, training programs, policies, practices and programs which provide equal employment opportunities;

(k) Order Defendants to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(l) Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

### JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

### CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

**RESPECTFULLY SUBMITTED,**

**KOLLER LAW, LLC**

Date: June 2, 2021　　　　**By:**　*/s/ David M. Koller*
　　　　　　　　　　　　　　　David M. Koller, Esquire
　　　　　　　　　　　　　　　2043 Locust Street, Suite 1B
　　　　　　　　　　　　　　　Philadelphia, PA 19103
　　　　　　　　　　　　　　　215-545-8917
　　　　　　　　　　　　　　　davidk@kollerlawfirm.com

　　　　　　　　　　　　　　　*Counsel for Plaintiff*